```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

BELTWAY CAPITAL, LLC et al.    *
                               *
        v.                     *  Civil Action WMN-11-376
                               *
MORTGAGE GUARANTY              *
INSURANCE CORPORATION          *

        *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Pending before the Court are two motions: a motion to remand filed by Plaintiff Beltway Capital, LLC (Beltway), ECF No. 15; and a motion to compel arbitration filed by Defendant Mortgage Guaranty Insurance Corporation (MGIC), ECF No. 4. Both motions are fully briefed and ripe for review. Upon consideration of the pleadings and applicable law, the Court will deny Beltway's motion for remand and grant MGIC's motion to compel arbitration.[1]

I. INTRODUCTION

MGIC provided mortgage insurance on five mortgage loans in which Beltway claims an interest. The loans were foreclosed upon. In turn, MGIC rescinded coverage on the loans based on alleged material misrepresentations made on the loan origination documents. Beltway disputes MGIC's rescission and, to that end, filed this declaratory judgment action in the Circuit Court of

---

[1] MGIC also filed a motion to stay proceedings in this case pending the outcome of its motion to compel arbitration, ECF No. 5. This motion will be denied as moot.

Baltimore County to clarify its rights under the mortgage insurance policies (Policies).  MGIC removed the case to this Court on the basis of diversity jurisdiction and filed a motion to compel arbitration pursuant to the Policies.  Beltway opposes the removal, as well as MGIC's efforts to compel arbitration, and filed a motion to remand the case to state court.  As Beltway's motion to remand requires a jurisdictional analysis, the Court will address it first.

II.   MOTION TO REMAND

In its motion to remand, Beltway argues the Court either should or must abstain from exercising its jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (DJA), and therefore remand the case to state court.  The DJA grants district courts the discretion to entertain declaratory judgment actions; courts need not hear such actions in all cases.  United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998).  "[C]ourts may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an 'actual controversy' between the parties . . . ; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in the exercise of jurisdiction."  Volvo Const.

Equip. N.A., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004).

To the extent Beltway argues that "this action must be remanded back to the Circuit Court of Baltimore County," Mot. Remand at 6, ECF No. 15-1 (emphasis in original), it does so because it claims the Court lacks an independent basis for subject matter jurisdiction. This is incorrect. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the parties are diverse as to their citizenship and the amount in controversy exceeds the statutory minimum. Beltway concedes this point later in its memorandum by admitting that "diversity of citizenship does exist here." Id. at 8. Where, as here, an action originally filed in state court could have been filed in federal court, a party may remove the action to a federal court under 28 U.S.C. § 1441(a). Thus, the Court has an independent basis for jurisdiction over the parties and therefore the power to entertain the dispute.

Nevertheless, Beltway points to Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994), for the proposition that a declaratory judgment action may not be used "to achieve a federal hearing in a case otherwise not removable."[2] This case, however, is otherwise removable. MGIC

---

[2] Beltway also cites Riley v. Dozier Internet Law, P.C., 371 Fed. Appx. 399, 2010 WL 1441079 (4th Cir. 2010), for the same

3

does not rely upon the DJA to provide a jurisdictional hook; rather, the Court has diversity jurisdiction. The <u>Nautilus</u> court's concern regarding "procedural fencing" is discussed within the context of factors a court should consider when deciding whether to exercise its discretion under the DJA.[3] <u>Id.</u> <u>Nautilus</u>, therefore, is apposite to the question of whether this Court has an independent basis for jurisdiction.

While the Court has the power to hear this case, it need not do so; the DJA grants the Court discretion to hear or not to hear declaratory relief actions. As such, Beltway argues the Court should abstain from hearing this case. Courts must consider several factors when deciding whether to entertain a DJA action. <u>Aetna Casualty & Surety Co. v. Ind-Com Electric Co.</u>, 139 F.3d 419, 422 (4th Cir. 1998). The factors include: whether the action will be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted;" whether the parties are merely forum

---

proposition. <u>Riley</u> is both an unpublished decision without precedential effect and factually distinguishable. The Court need not address it further.

[3] Procedural fencing is a practice in which a party files a declaratory judgment action in federal court premised upon a controversy already underpinning a state court action as a device "to provide another forum in a race for res judicata." <u>Nautilus</u>, 15 F.3d at 377. In effect, the practice constitutes forum shopping and subverts a plaintiff's choice of venue.

shopping; and considerations of federalism, efficiency and comity, given a state's interest in having state law questions adjudicated in state courts.  Id. at 422-23 (citations omitted); see also, Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942); Wilton v. Seven Falls Co., 515 U.S. 277 (1995).

In this case, the majority of the factors weigh in favor of hearing the action in federal court.  First, there is no related state court action pending premised upon the instant controversy, so the Court need not be concerned with avoidable entanglement of state and federal court systems.  Second, there is no evidence of "procedural fencing," as MGIC merely removed this case based upon diversity jurisdiction.  Third and most importantly, there are no substantial questions of Maryland state law at issue in this dispute.  The Policies, all of which are substantially uniform, include a choice of law provision stipulating that the Policies will be governed by the law of the state in which the office of the original insured is located. Am. Compl. Ex. 6, Policy § 7.11.  As applied to these five Policies, the law governing this dispute will be that of North Carolina, Arizona, Texas and Illinois.  Am. Compl. ¶¶ 21, 36, 52, 66 & 82.  Because Maryland state law is not at issue in this case, Maryland state courts have no heightened interest in adjudicating the claims.

5

Weighing against hearing the case is that Beltway asks only to clarify certain narrow questions regarding the Policies in this action.  Beltway's Amended Complaint does not request a full resolution of the dispute, and if the Court were to entertain the action, its ruling would not be dispositive of the entire controversy.  While this creates a risk of piecemeal litigation, the risk is mitigated because the policies demand and the parties have agreed to resolve their disputes in arbitration.  As discussed below, Beltway filed this action to clarify a narrow question of law before proceeding to arbitration as planned, so there is little risk that this case will land back in court once Beltway's question is resolved.

Beltway also argues Maryland state courts have a significant interest in this action because the property subject to one of the five Policies is located in Maryland.  Yet, none of the Policies invoke the law of Maryland, and any other Maryland state interests are minimal when compared to the factors discussed above.  Finally, Beltway relies upon a similar case from the Northern District of California where that Court abstained from exercising jurisdiction over a declaratory judgment action and remanded the case to California state court. Countrywide Home Loans, Inc. v. Mortgage Guaranty Ins. Corp., No. C 10-00233 JSW, ECF No. 36 (N.D. Cal. Mar. 30, 2010).  That memorandum opinion is unpublished and has no persuasive effect.

Moreover, the insurance policies in that case, unlike those in this case, were governed by California state law, and the action was first filed in California state court. Thus, the federal court in that case found California's interest in adjudicating claims under its own law dispositive. The same interest is not present here. Consequently, the Court will deny Beltway's motion to remand.

III. MOTION TO COMPEL ARBITRATION

The Policies at issue contain a comprehensive arbitration clause as follows:

> Unless prohibited by applicable law, all controversies, disputes or other assertions of liability or rights arising out of or relating to this Policy, include the breach, interpretation or construction thereof, shall be settled by arbitration. Notwithstanding the foregoing, [MGIC] or the Insured both retain the right to seek a declaratory judgment from a court of competent jurisdiction on matters of interpretation of the Policy.

Am. Compl. Ex. 6, Policy § 7.6(a).

Despite the broad scope of the arbitration agreement, Beltway filed this case because it disputes MGIC's position regarding certain Policy provisions bearing on the proof MGIC is required to produce to establish it was within its rights to deny Policy coverage. For example, with respect to one of the Policies, Beltway's Amended Complaint asks the Court to:

> A. Adjudicate the obligations of the parties as to the burden of proof relating to exclusions of coverage under the MGIC Policy . . . .

>    B.  Find and declare that MGIC has the burden of
>    proving that it issued the [Policy] in reliance on a
>    material misrepresentation contained in the original
>    appraisal.

Am. Compl. at 9-10. Beltway includes similar prayers for relief with respect to the other four Policies at issue insofar as Beltway asks the Court to determine which party bears the burden of proving certain elements of contract breach. See Id. at 16, 20-21, 26-27, 31-32.

While Beltway claims its lawsuit seeks an interpretation of the Policies and therefore falls within the arbitration clause's exception, the parties also entered into a separate agreement bearing on whether the parties must arbitrate their dispute. Not long before Beltway filed this lawsuit, the parties agreed to consolidate their disputes arising from the five Policies and engage in arbitration in Baltimore. This agreement appeared in an email message from Beltway's counsel, Don Proctor, to MGIC's counsel, Ralph Gundrum. The message provided:

> Ralph:
>
> In our conversation yesterday, you said that MGIC will
> agree to a consolidated arbitration in Baltimore of
> the . . . claims, provided we agree not to file our
> arbitration papers until October 15, 2010. You also
> stated that as part of that agreement, MGIC will agree
> to enter into good faith settlement discussions with
> me between now and October 15, 2010. Finally, you
> stated that as part of that agreement MGIC will agree
> to toll any time period affecting the filing of any
> suit or action (including arbitration) between now and
> October 15, 2010.

> I have conferred with Beltway Capital, LLC and I am authorized to agree to these terms. Please confirm MGIC's agreement to these terms by return email.
>
> Don Proctor

Gundrum Aff., Ex. A, ECF No. 4-3 at 3. The parties now dispute the purpose of this agreement.

MGIC claims Beltway should be compelled to engage in arbitration for two reasons. First, MGIC argues Beltway's lawsuit does not raise questions of Policy interpretation within the arbitration clause's exception. Rather, MGIC submits that Beltway is merely asking the Court for "evidentiary rulings" regarding the means by which "the laws of Illinois, North Carolina, Arizona and Texas allocate the burden of proof." Mot. Compel at 5, 6. Second, MGIC argues that Beltway agreed to consolidate and arbitrate these disputes in Baltimore via its email communication, and that the agreement implicitly demonstrates that Beltway waived its right to seek a declaratory judgment regarding Policy interpretation. As such, MGIC asks the Court to compel arbitration as required by the Policies, the email agreement, and the Federal Arbitration Act.

When a contract contains an arbitration clause, "there is a presumption of arbitrability," provided there is no express provision excluding a particular grievance from arbitration. <u>AT&T Technologies, Inc. v. Communications Workers of America</u>,

475 U.S. 643, 650 (1986). Under the Federal Arbitration Act (FAA), "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983). Indeed, the "national policy favoring arbitration" demands that arbitration clauses be "construed very broadly." Granite Rock Co. v. International Broth. of Teamsters, --- U.S. ---, ---, 130 S. Ct. 2847, 2857 (2010). The presumption applies even when parties have only agreed to arbitrate some matters pursuant to an arbitration clause. Id. Thus, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." Moses H. Cone Memorial Hosp., 460 U.S. at 24.

In this case, there is an express provision exempting from arbitration declaratory judgment actions regarding Policy interpretation. Beltway's Amended Complaint, however, asks the Court only to declare which party bears the burden of proof regarding certain elements of the alleged Policy breach. The elements of contract and tort claims, as well as the means by which a party may prove such elements, are established by the common law of each state and are therefore issues of law. To

the extent a contract alters the means by which a party may establish a breach of that contract, the plain language of the contract will govern. The primacy of contract, too, is an issue of law and does not bear upon the specific language of the Policies. Thus, Beltway has not asked the Court to interpret the meaning of any of the Policies' provisions; it has only asked the Court to restate the law of contracts in North Carolina, Arizona, Texas and Illinois. Moreover, insofar as Beltway and MGIC disagree over their respective burdens of proof, their disagreement is not one that would require the Court to interpret the language of the Policies.

Furthermore, Beltway's email agreement creates a measure of doubt as to whether Beltway actually intended to seek a declaratory judgment before engaging in arbitration. The plain language of the agreement shows that Beltway agreed to consolidated arbitration in Baltimore. On the other hand, MGIC agreed to toll "any time period affecting the filing of any suit or action (including arbitration)," which indicates the parties, or at least Beltway, may have contemplated this declaratory judgment "suit" prior to arbitration. Under the FAA, however, any doubts regarding the arbitrability of a dispute are to be resolved in favor of arbitration. Thus, because Beltway's Amended Complaint does not ask the Court to interpret the Policies, and because Beltway appears to have agreed to

arbitrate the dispute without filing a lawsuit, the Court will grant MGIC's motion to compel arbitration.

IV. CONCLUSION

For the foregoing reasons, Beltway's motion to remand, ECF No. 15, will be denied, and MGIC's motion to compel arbitration, ECF No. 4, will be granted.  The Court will issue a separate order to that effect.

```
                          _____/s/_____
                          William M. Nickerson
                          Senior United States District Judge
```

May 25, 2011